We'll move on to the fourth case of the day, Lavite v. Dunstan, 1834-65, and we'll hear from Mr. Burkett. Mr. Burkett. May it please the court, Mr. Gilbert. My name is Tom Burkart and I represent Brad Lavite, a highly decorated combat veteran who was a convoy commander in Iraqi Freedom 1 and 2. As such commander of convoys, he was exposed to IEDs, improvised explosive devices. He was blown up twice. He has more metal in his legs that he has to make special provisions with regard to the TSA if he flies. As a result of that, he has been diagnosed and suffers from PTSD. He has been on going care. He was released from active duty in 2004. He's been under care from the VA hospital in Jefferson Barracks since that time. He has been maintaining that care so that he's been in control of his symptoms all but for two times. That's a lot. One of those instances occurred in March of 2015. It was not on county property. It was not on public property. I'll get into the circumstances of what happened there later on. In any event, this highly decorated combat veteran is released to full service duty after this PTSD episode by his psychiatrist, his board certified psychiatrist at the VA hospital. He's been given a full release. The county bans him from all county property. You're going to maybe hear arguments, because I've heard it before, that no, it was just the administration building. My client, and we cite in the brief to the specific documents, my client had to get permission from Judge Becker, the out-of-circuit judge that was trying this case in the state court, to attend his own hearings. He had to get permission from the state's attorney's office to attend his brother's wedding at the courthouse. So it wasn't a situation where he was excluded from just the administration building. It was all county property. Mr. Burkott, you cast the claim here in terms of, or one of the claims, in terms of a First Amendment right to assemble. Yes, sir. What authority do you have, though, for the proposition that that right extends to going to work in a particular location? And the reason I ask that question is because I don't understand Mr. Levitt to be saying, you know, I wasn't able to go to the county fair, I wasn't able to participate in this protest march, I wasn't able to go to the sit-in, I couldn't go to the public library, I couldn't enter the parks. I understand to be saying I couldn't go to work. But when you're talking about a right to assembly, aren't you talking about a right to access some space or to gather for purpose of engaging in expressive activity? The First Amendment claims address two issues, the freedom of speech and the right to assemble. The right to assemble, we believe, occurred, and the authority? I'll take Judge Herndon's opinion that he wrote with regard to the motion to dismiss, where he said we stated a viable cause of action. That's the authority I have here. In fact, I don't know why Judge Herndon flipped from what he did in motion to dismiss, because no discovery was conducted in this case. We wanted to go to trial and put the evidence on. We were at the eve of trial, and we were ready to go, and then suddenly Judge Herndon has a change of heart. Am I right, though? Yes. As a factual matter, all you're saying is that, look, you've characterized it as a claim for a right to assemble, but what you mean as a factual matter is he couldn't go to work in the administration building. I think it's the—well, I wouldn't characterize it that way. I think it's more of like a ban on all county property, which was in retaliation for what he had done before. Okay, was he able to go to—he wasn't banned from the wedding? He had to get special permission to go to the brother's wedding. Did he go to the wedding? Yes, he did. And did he—was he able to go to the courthouse to make his appearances? After Judge Becker entered an order saying he was allowed to go to the courthouse from then on. Okay, so he was able to do those things, and I know he wasn't happy to have to get the permission, but he was able to do them. What he wasn't able to do was work in the administration building. We were told by Deputy Trent—I forgot his last name—that I was particularly told, because I didn't want my client to be confronted with an arrest situation, that it was a county-wide ban. If he steps on county property, period, we're going to ask him to leave. If he doesn't leave, he'll be arrested for trespassing. And I made those allegations in the complaint, too. Oh, understood. Okay, so that's what you're saying. That violates the First Amendment. Yeah. All right. Okay. In any event, getting back to where I want to kind of go with this, after having been exposed to 21 months of being banned from county property, it's kind of like pouring lemon juice into a paper cut when the trial court asserts the jury's function and grants summary judgment. This was a summary judgment, so we are talking about de novo review. And it really was—I was flabbergasted. We had survived the motion to dismiss. No additional evidence was put on. Granted, Mr. Perenti filed an affidavit, but Mr. Leviti filed a counter-affidavit saying no, that you did ask me to hire these people. I think, didn't it go to summary judgment because the settlement broke down? And after the settlement broke down, it proceeded to summary judgment. But in that little window of time, did you propound any written discovery? No. Did you issue any deposition requests? Let me take that back. The parties were allowed—I timely did my initial disclosure. And so that was written disclosure on my part. The defendants were allowed leave to file late disclosures. I may be wrong, but I think that was after the settlement broke down. But they were allowed to file those late disclosures so that they could, I guess, call witnesses and whatnot. You didn't conduct any written discovery or take any debts, though? No. Oh, and I want to take back on that. We did take, because he was in ill health, the evidence deposition of Robert Sedlicek. He was the president of the executive board of the VAC, and basically just to preserve the evidence that Mr. Parenti told him, he had to fire Brad Levine. And that's what he testified to in his deposition. That's the only deposition that was taken. But it really wasn't discovery. It was evidence that we needed to preserve in the event something would happen with Mr. Sedlicek's health. Mr. Burkett, I just want to clarify, the injunction is now lifted, right? So all claims for injunctive relief are moot? The answer is yes. But the reason it was was because there was an election and the ---- Well, I'm just asking if it's moot. So he's allowed freely to access the administration building now, correct? Yes, yes. And on that point, he's been allowed to do that since December 2016, December 5th of 2016, when the incoming chairman lifted the ban, and there has not been a single incident since that time. I think that speaks volumes. Right. Hindsight helps us here. But do we have the videos from the 2015 incident in our record? I didn't put. Do they? All right. I'll ask defense counsel about that. Let me ask you, Mr. Burkard. So the government has obligations as an employer for the safety of its employees, right? Yes. And the safety of others who may want to come to government properties to petition the government to get marriage licenses to do whatever government business they might have, pay their taxes and so on. Is it your position that issues of safety posed by some individuals cannot be addressed by the county or that other processes have to be used or what? No. That is not my position. Okay. I agree with your statements that the public can, of course. So if a county official has concerns about an individual, whether employed directly by the county or not, being a potential threat to the safety of others in the building, what can that person do? Consistent with the law as you understand it. That person can take reasonable steps to guard the safety of the public, but it is our position that in this case safety had nothing to do with it. Your theory as I understand it is that disagreements on policy and funding matters two or three years earlier were what led to the retaliation against your client, correct? Not exclusively. That's part of it. Okay. What else? Well, at this time, leading up to it, closer in time, there was a VAC employee named Nicolette Watson, and she basically had eyes on Brad's job, on Mr. Levine's job. And she was meeting consistently while Mr. Levine was being treated during this period of time with county officials, one is Associate Judge Sarah Smith, she's now a circuit judge, to discuss Brad's situation. All of that, I had her subpoenaed, and Judge Smith was revealed as a witness. All of that would have come out if we had gotten a chance to go to trial. But we weren't. He was denied his day in court, and that's what, again, it's like pouring lemon juice into a wound. He gets all the way to court, he's ready to go to trial, and he suddenly is said, you don't get to go to trial. Our biggest point here is this is not something that should have been given for summary judgment. This is something that 12 people in a jury box should have come to a conclusion. We're not saying that they could have concluded in favor of the county, but we're saying that's where the decision needed to be made. It was wrong to assert that from the jury and to deny my client his day in court and the opportunity to present his evidence. He didn't even get to appear in front of the trier of fact. He didn't. This was done without him there. No, the only additional thing that the county produced after the settlement negotiation was the videotape, the dash cam. I've seen the dash cam. I don't think it's that bad. Frankly, I wanted the jury to see it, too, because I think the jury is going to ruin my client's favor. Because if you would have been taking me back to a hospital that misdiagnosed me a year earlier and left me in pain for three days, I would have kicked out the windows of the squad car. Well, hold on. I mean, after that incident with the squad car, I mean, he had that email exchange with, what's the guy's name, Parente or something? I don't remember his name, but he agreed to stay away from the administration building. He was acting without counsel at that time, number one. Number two. Well, hold on. Whether he was or he wasn't, didn't his email exchange say, I got it, I won't come in the administration building? Well, wouldn't, after being told he can't, yes. Well, that's just what the evidence is, right? Whether, I mean, I'm just looking at the record. Wouldn't you, as a layperson, being threatened by the county administrator, saying you should stay away? And he says, okay, let the process work. That's part of the due process claim. There was no process. Let the process work. Let me have a hearing on this. Let's look at Dr. Loitman's statement. Dr. Loitman, if called as a witness, would have testified she's not supposed to see the video. It turns her into an advocate. And so, but we weren't allowed to present any of that because it was asserted under summary judgment. I thought it was this guy, Parente. Am I right? Maybe your adversary will remember this, but I thought this guy, Parente, was the one that said stay away from the building. And your client said, no problem, I will. In the e-mails. In the e-mails, yes. I guess. I don't remember the exact e-mail, but I do remember an e-mail where Brad agreed. I've got it here. Keep going. I'll find it. Do you want to save the rest of your time for rebuttal? Sure. I think everything else was covered in the brief. Thank you. For defendants, Mr. Gilbert. Thank you, Your Honor. May it please the court, counsel. Your Honors, this is the perfect case. Well, not the perfect case. This is an appropriate case for summary judgment. Because there were no First Amendment violations in this case. And there were no due process violations in this case. If Mr. Burkhardt's theory is correct, and let's assume all the facts he's alleged are true, even though they're not. Because not only did we file affidavits from Joe Parente and Alan Dunstan, who was the county board chairman, we filed a statement of facts that went uncontested. Other than for Leviti's affidavit, which didn't address most of our facts in our statement of facts. But even if you assume that what he's arguing, and Judge Scudder is exactly right, he's arguing that there's a First Amendment right for a private employee to go to work in a public office building, void of any expressive activity. That's not the law. And at a bare minimum, not only is that not a First Amendment violation if you assume it's true, but it also suggests that the defendants were entitled to qualified immunity because it's not a right that is clearly established. So how about the First Amendment right to petition the government for grievances? The county government simply decides for whatever reason that we think a particular person is dangerous. We don't want to let them in public buildings where they could do business. They need to do business by email, online, or by mail. So we're going to issue an order banishing this person from county offices. Does that pose a problem under the right to petition under the First Amendment? I don't believe so, Your Honor, so long as. Isn't that part of a rather fundamental liberty that people in the United States have? And can they be taken deprived of that without due process of law, notice, and an opportunity to be heard? Well, I think, okay, on a due process argument, not First Amendment, but on a due process argument, I would say it really depends because the process, in order to make a due process argument, you have to have a property or liberty interest. Of course, we know that. That's why I started with the right to petition the government for grievances under the First Amendment. Sure, and I think I would agree with the court that, yes, there has to be some modicum of process, either post-deprivation or pre-deprivation. It depends on the circumstances, I think. And in this case, we don't have that because Mr. Leviti never expressed a desire to be heard on a First Amendment issue. It was just going to work. And as Joe Scudder points out, in that response to Joe Perrini, he says, okay, no worries, I won't be in the county administration building for anything. That's paraphrasing, but that's pretty close to what he said. He also says that, hey, I'm perfectly happy with being on leave with pay until we sort some of these issues out. So in terms of a First Amendment issue, there isn't one. Well, in addition to your point and Judge Scudder's point about him not trying to exercise the right of assembly, under the First Amendment, the same public forum doctrine applies for assembly, right? Yes. And the county building, the administration building is not a public forum. That is correct, Your Honor. The inside of the building where the offices are is a non-public forum. And in our brief, we argue this, that then the ban has to be reasonable. But I honestly am not convinced that there's even a First Amendment claim in there, period, for a person who's not an employee of the county to simply have access to billing to go to work. And so I think the whole case is built on a house of cards, because there's no First Amendment expressive activity, so it wasn't violated. Well, hold on. Let me tell you what I was concerned with, though. Sure. Okay, and I'm not sure that it's in the record. I haven't seen it. He has been very clear from the beginning, in his complaint and in his summary judgment papers, that he was banned from all county property. I know you disagree with that. But that's his contention, and he put it forward. But what I'm not seeing is a claim that I was missing my kids' t-ball games, I couldn't go to the county fair, I wasn't able to march in the parade, et cetera, et cetera. Am I right about that? You are correct, Your Honor. The only record evidence is a letter from Parenti that says you're not to come to the administration bill. And is he correct, though, about having to get permission to go to a wedding and go to his court hearings? There's nothing in the record about it other than these assertions in his complaint and his briefs. He swore to it, didn't he? Pardon me? He swore to it. Did he not? In his affidavit? Yeah. He may have. But those were initiated by Mr. Levite in a precautionary way to make sure there wasn't going to be any problem going to his brother's wedding and then also appearing for court appearances. The order from Judge Becker that he be allowed was basically an afterthought during one of our hearings in the state court case. But the facts are that he hasn't been excluded from anything other than the county administration building for good reason. Now, he says he was retaliated against. But here again, his First Amendment claims have to fail for two reasons. Number one, he says he was retaliated against three years after Joe Perrini asked him for funding for a probation officer and Brad Levite said no. That's not protected First Amendment activity. I scoured First Amendment jurisprudence for a case that would suggest that a private employer who says no to a public employer who asks the private employer to fund a position is covered by the First Amendment. It simply is not. So again, there is no protected activity to even start the debate about whether he was retaliated against because of the First Amendment activity. And perhaps the most thing I don't understand the most is the remaining allegation that Levite's opposition to this was a basis for retaliation when we have an affidavit and a statement of fact that went uncontested, both, that Joe Perrini, who made the decision to exclude him, and Alan Dunston, the county board chairman who endorsed it, never knew about Levite's opposition to the MAC attack expenditure. So there can be no causation, thus no liability. And again, on the First Amendment issues, Your Honors, it's clear to me anyway, and of course I'm the advocate, so it's going to be clear to me, that qualified immunity clothes everybody in this case. Now, Judge Herndon didn't address it, and I wish he had, because I think it's very clear that even in the due process, well, certainly in the First Amendment arguments, all the defendants were entitled to qualified immunity because there's no clearly established law of which they would reasonably have been aware. On the due process claim, I believe this court's opinion in the Manley case, which Judge Hamilton authored, forecloses the due process claim. We don't worry about who writes them.  That case clearly states that when all you have is a procedural policy, or a set of procedures, that you can't found a due process claim on that. And as Judge Herndon mentioned in his summary judgment order, they've yet to identify a liberty or property interest of which they were deprived without a hearing. And part of that may be because Leviti agreed to it, rendering any type of due process unnecessary. So, you know, this case is really, it is appropriate for summary judgment. The only contested fact, really, which I would submit is not an issue of material fact, is whether or not he and Parenti had this meeting in 2012 when Parenti said, I want you to pay for a probation officer, and Leviti said no. And the reason it's not a genuine issue of material fact is because it's not protected under the First Amendment and should not stand in the way of affirming Judge Herndon's motion for summary judgment. Let me go back to my, and change the hypothetical a little bit regarding due process claims. I understand that this may not be the claim the plaintiff has asserted, but the power that is exercised here is concerning. Let's suppose we've got a citizen of the county who's convicted of murder, sent off to Illinois Department of Corrections for 20 years and comes back. He served his sentence. He needs to go to the county office to get an ID, to do other business, and so on. And can a county official decide that person is dangerous and we need to keep him out of this building? On that set of facts, Your Honor, I would say no, without more. What would it take? I think it would take knowledge on the part of the county official that somehow that person presents a present or, well, a present risk of danger to either himself or the inhabitants of the building or the visitors or the people who are in that building. Okay, let's suppose the county executive gets a report. Maybe it's from a probation officer or parole officer or a neighbor who says this person is angry, unhappy with the justice system in the county that sent him away. Is there any process required before an order is issued excluding him from county property, county offices? I don't believe any pre-deprivation process would be required, and the state has its own post-deprivation remedies available. Even a county might have a grievance procedure that citizens can file, or he can go to court and seek an order allowing him into the building, saying that the judgment of the county official was unreasonable. You think the onus would have to be on him to figure out what the process would be and then invoke it? In that case, I do, Your Honor, because it's not a situation where the county officials are taking action in a sense on their own initiative in the absence of some information coming from outside. Now, if the guy were already in the building  and ran over and said, hey, you've got to get out, it might be a different case. But I don't believe the law is that in a situation like that, that the citizen would be entitled to pre-deprivation due process, often because when you have a one-off like that, it's not feasible to provide pre-deprivation due process. Thank you. The last point that I just want to say a word about the sheriff's liability here. The sheriff wasn't the decision-maker, so I think under the long line of cases requiring individual involvement, personal involvement in the decision to ban Mr. Levide here, the sheriff clearly was not the decision-maker and can't be a defendant. Well, can be a defendant, but can't be liable. And then finally, on the Monell aspect for the county, I don't think the county is liable, and of course our contention would be the county is not liable because to have a Monell violation or Monell liability, I should say, you have to have a predicate constitutional violation, and we believe none has been proved and would ask the court to uphold summary judgment. Thank you. Thank you, Mr. Gilbert. How much time? Okay, let's make it a minute and a half and go ahead. I'll try and be brief. Statement and limit to rebuttal because I rely on the briefs for everything else. The statement of facts went unrebutted. The complaint pretty well rebutted them. My understanding on a summary judgment, you have to have an affidavit if you're going to contradict the statement of facts and the complaint. The fact that they put a statement of facts that's unsworn to in their brief doesn't mean anything. He claims that Brad Leviti posed a danger, and that was the real reason for him to come in. What about other vets, other vets that suffer from PTSD? This was a ban on one person, one man, and other vets go to the VAC so that they can get help. Leviti never expressed First Amendment concerns. He did when I started representing him. Brad was not on leave with pay. Brad was working from remote locations, the VFWs and whatnot. He could have much more efficiently done his job if he was allowed into his office. I'm sorry, Your Honor, I just disagree with you, and I did it in the briefs. If the county administration building is not a public forum, I don't know what is. It is, and it's subject to that higher scrutiny. In fact, I personally participated in a display of free speech there when thousands of petitions were put on there to, I think it had to do with a real estate tax deal. Now, this is another one. Anything further? Just four things, if it's all right. Briefly. The sheriff wasn't a decision maker. I'll jump to that. His affidavit said he was. In his affidavit, the sheriff basically said, I was the one that brought this to Parente's attention saying that I think that something needs to be done. And I guess I'm out of time. Thank you, counsel. Thanks to both counsel. The case is taken under advisement.